UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ADAM JAMISON,

                      Petitioner,                  15-cv-6716 (PKC) (AJP)

    -against-

                                                        ORDER ADOPTING REPORT
                                                          AND RECOMMENDATION

THOMAS GRIFFIN,

                      Respondent.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        On August 10, 2015, Adam Jamison, who represents himself *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 2). This Court referred the Petition to Magistrate Judge Andrew J. Peck. (Dkt. 5). On April 27, 2016, Magistrate Judge Peck issued a Report and Recommendation (the "R & R") recommending that the habeas petition be denied. (Dkt. 36). On June 13, 2016, Jamison filed objections to the R & R. For reasons to be explained, the Court adopts the thorough and well-reasoned R & R in its entirety.

BACKGROUND.

        At the conclusion of a 2008 jury trial in the New York Supreme Court, Bronx County, Jamison was found guilty of first degree robbery, second degree attempted assault, and second degree criminal trespass. (Trial Transcript ("Tr.") 756-59). Jamison moved *pro se* in the Bronx County Supreme Court to vacate his judgment of conviction pursuant to NYCPL § 440.10 and, through counsel, filed a direct appeal of his conviction and sentence with the Appellate Division, First Department. (Declaration of Noah J. Chamoy ("Chamoy Decl.") ¶¶ 25-26). The Bronx County Supreme Court denied Jamison's first § 440.10 motion. (Chamoy Decl. ¶ 31). The First Department then granted Jamison leave to appeal the denial of his § 440.10 motion,

which was consolidated with the pending direct appeal of his conviction and sentence.  (Chamoy Decl. ¶ 33).  The First Department unanimously affirmed Jamison's conviction.  People v. Jamison, 96 A.D.3d 571 (1st Dept. 2012), and the New York Court of Appeals denied Jamison leave to appeal the First Department's decision.  People v. Jamison, 19 N.Y.3d 1026 (2012).

Before the Court of Appeals denied Jamison leave to appeal, Jamison moved *pro se* a second time to vacate his conviction pursuant to § 440.10.  (Chamoy Decl. ¶ 40).  The trial court denied his motion without a hearing and then denied Jamison's motion to reargue.  (Chamoy Decl. ¶¶ 43-44).  Jamison sought leave to appeal both decisions, but the First Department denied him leave to appeal.  (Chamoy Decl. ¶¶ 45-46).  After the Court of Appeals denied Jamison leave to appeal but before filing his present habeas motion, Jamison moved *pro se* in Bronx County Supreme Court to set aside his sentence pursuant to § 440.20 and moved a third and fourth time to vacate his conviction pursuant to § 440.10.  (Chamoy Decl. ¶¶ 47, 51, 58).  Again, the trial court denied Jamison's motions and the First Department denied Jamison leave to appeal.  (Chamoy Decl. ¶¶ 48-50, 55-57, 60-62).

DISCUSSION.

In reviewing an R & R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The Court conducts a *de novo* review of the R & R to the extent Jamison raises an objection.  28 U.S.C. § 636(b)(1).  In order to establish his entitlement to federal habeas relief, Jamison must make a showing that the trial court's actions were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  See Williams v. Taylor, 529 U.S. 362, 402-13 (2000) (applying 28 U.S.C. § 2254(d)(1)).

I. The R & R's Principal Conclusions and Reasoning:

In his Petition, Jamison raised a large number of objections to the state court proceedings. His complaints fit into four broad categories: claims of ineffective assistance of counsel; trial court errors; <u>Brady</u> violations; and, other miscellaneous errors. Magistrate Judge Peck's well-reasoned R & R rejected each of Jamison's arguments in support of his § 2254 petition.

First, Magistrate Judge Peck concluded that each of Jamison's arguments for why his counsel was ineffective was meritless. Defense counsel's failure to seek the reopening of a suppression hearing regarding two witness identifications was not ineffective assistance because there was no evidence showing that the procedures leading up to the identifications were unduly-suggestive or, even assuming the procedures were unduly suggestive, that the identifications were unreliable. Moreover, the R & R explained that Jamison's counsel made a strategic decision in arguing the misidentifications to the jury instead of seeking their exclusion. (R & R 34-40). Defense counsel's failure to call certain witnesses was also not ineffective assistance because the decision was within the ambit of reasonable trial strategy and there was little evident value in calling the witnesses proposed by Jamison. (R & R 40-46).

Magistrate Judge Peck addressed Jamison's next two claims—the correctness of the jury instructions and the sufficiency of the evidence—as both substantive challenges and ineffective assistance challenges. Ultimately, Magistrate Judge Peck found that Jamison's complaints were meritless under both frameworks. Regarding Jamison's various challenges to the jury instructions, the R & R concluded that, because the court's instructions appropriately stated the law, they were not substantively defective and counsel's failure to object to them or request additional instructions was not ineffective assistance. (R & R 46-54). Regarding

Jamison's argument that there was insufficient evidence to convict him for first degree robbery or attempted second degree assault, the R & R concluded that the evidence, when viewed in a light most favorable to the People, supported the jury finding that Jamison committed those crimes and that Jamison's counsel was not ineffective because he twice attempted to persuade the trial court that the prosecution had failed to meet its evidentiary burden. (R & R 54-60).

Second, Magistrate Judge Peck concluded that Jamison's arguments urging that the trial court committed various errors that warrant reversal of his conviction were also without merit. The fact that the trial court allowed Jamison to proceed *pro se* from November 5, 2007 to August 4, 2008 without conducting a full hearing on Jamison's waiver of his right to counsel was not reversible error because Jamison did not show that he suffered "actual prejudice" during that pre-trial period. (R & R 60-63). Nor did the trial court improperly admit hearsay and unconstitutional "testimonial" evidence. According to the R & R, the admission of Bashir's testimony and 911 calls did not violate the confrontation clause because Bashir was available for cross-examination at trial and the 911 calls were not prejudicial hearsay because they did not alter the "fundamental fairness" of Jamison's trial. Magistrate Judge Peck also found Jamison's challenge to the admission of paramedic Perez's testimony to be procedurally barred. And, he concluded that, even if the challenge was procedurally appropriate, the admission of the testimony did not impact the "fundamental fairness" of Jamison's trial. (R & R 63-73). Lastly, the R & R concluded that there was no evidence supporting the claim that Justino Hernandez willfully provided false testimony. (R & R 73-76).

Third, Jamison claimed that the prosecution repeatedly violated its duty to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Magistrate Judge Peck found these arguments to be meritless as well. Regarding Mitchell's medical records, the R

& R pointed out that the State maintains that they gave Jamison the records as part of pre-trial discovery and Jamison presents no evidence to the contrary. But, even assuming that the State did withhold the records, they were not material for Brady purposes because they did not undermine a critical element of the prosecution's case. (R & R 78-81). Magistrate Judge Peck also concluded that Jamison's claim that the prosecution did not disclose Hernandez's full criminal history was speculative because there was no evidence that the requested material had any information not otherwise disclosed to Jamison or that such information could further impeach Hernandez. And, Jamison's claim for Hernandez's missing psychiatric treatment records was meritless because there is no evidence showing that the prosecution was aware that Hernandez had any mental condition or otherwise suppressed impeachment or exculpatory evidence related to Hernandez's mental condition. (R & R 81-84).

Jamison also argued that the prosecution suppressed an exculpatory surveillance video that allegedly showed Jamison in a different location around the time of the charged robbery. Magistrate Judge Peck concluded that this claim was procedurally barred under the independent and adequate state ground doctrine because the First Department held that Jamison had abandoned his claim to the tape and that Jamison could not "show cause" why he abandoned his claim or demonstrate that the failure to review such claims would result in a fundamental miscarriage of justice. Nor was the state court's application of this procedural bar to Jamison's claim exorbitant: Jamison did not comply with the state preservation rules that New York courts routinely enforce on litigants. (R & R 84-94).

Magistrate Judge Peck rejected Jamison's claim that the prosecution withheld its "white folder" information containing impeachment evidence as well. He held that the state court's conclusion that the information about witness identifications contained in the "white

folder" was identical to the information given to Jamison at arraignment was reasonable and, even if the information was not the same, Jamison did not show that the information in the folder was "material" under Brady.  Nor did Jamison demonstrate that the two information sheets regarding Hernandez and Kaane were relevant to his defense.  (R & R 94-96).

The R & R concluded that Jamison's Brady claim regarding the suppression of multiple property clerk vouchers lacked merit because the evidence presented at trial established a chain of custody that showed no prejudice resulted from the two missing vouchers.  (R & R 96-100).  Jamison's assertion that the prosecution withheld evidence relating to a different burglary and to a witness's identification of Jamison were also meritless.  More specifically, his claim that the identification was exculpatory was speculative because the photo array itself lacked critical information tending to establish Jamison's alibi.  And, his claim that the burglary evidence showed the weakness in the prosecution's timeline could not overcome the fact that he already had access to a criminal complaint that included much of the same evidence.  (R & R 100-02).

Last, Magistrate Judge Peck found Jamison's remaining arguments about "false representations" regarding the seizure of his green shirt, the citizenship of the jurors, and the fact that the interpreter was unsworn to be meritless because there was no evidence tending to established that a constitutional violation occurred.  He found Jamison's argument that he should have received an evidentiary hearing on all of his post-trial motions wanting because no such hearing is compelled by the Constitution.  And, he found Jamison's argument that the prosecution presented false and misleading facts to be inadequate because it was not separate and apart from the CPL § 710.30 notice claim Jamison made on direct appeal, which does not present a constitutional issue subject to federal habeas review.  (R & R 102-07).

II.	This Court's Review:

The Court has engaged in a *de novo* review of the R & R, and the record on which it is based, to the extent that Jamison has raised an objection.  See Rule 72(b), Fed. R. Civ. P.  The Court need not address in this Order all that it considered, but it has considered the entirety of the Objections.[1]  The Court, as noted, adopts the R & R in full.

Jamison's first objection to the R & R is that it did not address his argument that the State violated its Brady obligations by belatedly turning over certain exculpatory police reports.  (Jamison's Objections, 9-10).  The R & R did discuss Jamison's objections regarding certain "write ups" involving Hernandez and Kaane.  Nevertheless, to the extent Jamison is objecting to the late disclosure of police reports relating to other witness interviews, he does not demonstrate that the State actually failed to turn over said evidence or that, if it did, he was prejudiced.  Jamison's objection fails.

Jamison also objects to the R & R's conclusion that the trial court did not commit reversible error when it permitted Jamison to proceed *pro se* during the pretrial phase of the prosecution without first having conducted a waiver hearing.  (Jamison's Objections, 10-20).  The asserted error spanned the period from November 5, 2007 until August 4, 2008, at which time Justice Stadtmauer conducted a waiver hearing informing Jamison of the dangers of proceeding *pro se* and appointed Angel Perez as full-time counsel.  Prior to being appointed defense counsel, Mr. Perez served as a legal advisor to Jamison.  See Lainfiesta v. Artuz, 253 F.3d 151, 157 (2d Cir. 2001) ("The Supreme Court has held that violations of the Sixth Amendment right to counsel are *per se* reversible only when they amount to an [a]ctual or constructive denial of the assistance of counsel altogether.") (internal quotation marks omitted).

---

[1] The Court has reviewed the portions of the R & R to which no objections were made for clear error and found none.  See Rule 72, Fed. R. Civ. P. Advisory Committee notes (1983).

Because Jamison was not denied the assistance of counsel altogether during the pretrial period, the R & R's decision ultimately rested on the conclusion that Jamison did not show that he was "actually prejudiced" by the trial court's error.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) ("[H]abeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice.").

Jamison now claims that he was actually prejudiced because "discovery violations" occurred during the time he was proceeding *pro se*, including that "videotape surveillance/alibi evidence [was] suppressed and destroyed by the state." (Jamison's Objections, 19).  The record belies Jamison's argument.  It demonstrates that once Mr. Perez was appointed full-time counsel he notified the trial court that Jamison wished to address certain discovery issues.  At that time, Jamison categorized the alleged exculpatory video tape as irrelevant. Moreover, Jamison was not foreclosed from pursuing any other purported "discovery violations" at that time.  While the waiver hearing occurred only a week before trial, Jamison does not show any "actual prejudice."  His objection is without merit.

Jamison next objects to the R & R's finding that his counsel's failure to seek to reopen the suppression hearing relating to Hernandez's and Mitchell's identifications did not constitute ineffective assistance. (Jamison's Objections, 21-31).  However, Jamison fails to introduce evidence making the trial court's admission of the two identifications appear unreasonable.  Nor does he meaningfully refute the finding that defense counsel's decision not to seek a second suppression hearing, but instead to pursue a misidentification defense before the jury, was strategic.  See Strickland v. Washington, 466 U.S. 668, 690 (1984) ("[S]trategic

choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."). For those reasons, Jamison's objection fails.

Jamison's objection to the R & R's finding that defense counsel was not ineffective for choosing not to call defenses witnesses fails for the same reason. (Jamison's Objections, 31-35). He does not demonstrate that the trial court's conclusion that counsel's decisions were strategic was an unreasonable application of Strickland.

Regarding Jamison's objections to the R & R's conclusion that the jury instructions were appropriate declarations of state law, (Jamison's Objections, 35-40), he does not show that the trial court's instructions misstated the law, nonetheless, that any of the alleged "errors" violated a right guaranteed to him by federal law. See Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990) ("In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law."). More specifically, none of the discussed additions to or expansions of the instructions were supported by the evidence at trial or defense counsel's theory of the case. And, the trial court's inclusion of the lesser included offense of attempted assault in the second degree was not unreasonable under the circumstances. See N.Y. Crim. Proc. Law § 300.50 ("[T]he court in its discretion may, in addition to submitting the greatest offense which it is required to submit, submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater."). Accordingly, Jamison's objections regarding the trial court's jury instructions fails.

The final objection the Court will address is Jamison's assertion that he did not abandon his Brady claim regarding the allegedly exculpatory surveillance videotape. (Jamison's Objections, 40-49). Magistrate Judge Peck concluded that Jamison's claim that the State violated Brady by not turning over the videotape was procedurally barred by the independent and adequate state grounds doctrine. See Harris v. Reed, 489 U.S. 255, 262 (1989) ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, [] or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." (Internal citation and quotation marks omitted).

In disposing of Jamison's claim, the First Department held that:

> By failing to make any effort to obtain an allegedly exculpatory videotape after the People informed him of it and offered to make it available to him, defendant abandoned the claim that the People failed to disclose it []. The people disclosed the existence of this tape at the defendant's arraignment, but defendant made no mention of the tape before or during trial, except for a general reference to videotapes made in a discovery motion. Defendant never alerted the court to any claim that this videotape had not been produced.

People v. Jamison, 96 A.D.3d 571, 571-72 (1st Dep't 2012) (internal citation omitted). Relying on Hoyt v. Lewin, 444 F. Supp. 2d 258, 269 (S.D.N.Y. 2006), Jamison now claims that the state appellate court committed legal error because his omnibus discovery request for any "videotapes" shows that he did not abandon his claim. Hoyt, however, is inapposite and the First Department's conclusion that Jamison did abandon his Brady claim is reasonable. Unlike the defendant in Hoyt, Jamison did not raise the particularized issue of the surveillance videotape with the trial court any time after he was notified the tape existed.

- 10 -

Alternatively, Jamison argues that he had "cause" to abandon his <u>Brady</u> claim because the State misrepresented that it was not in possession of any videotape relating to the charged crimes. He argues that he could not have "abandoned" his claim if he no longer believed the tape existed. However, as Jamison himself noted to the trial court, the surveillance tape he now claims is exculpatory was related to an entirely different burglary. The tape was made known to him at his arraignment for that crime but Jamison did not pursue the tape. The State was not misrepresenting the facts when it said it had no videotapes related to the crimes for which Jamison was then charged and thus Jamison had no reasonable cause to abandon his claim for the tape.

Finally, Jamison fails to show that the "failure to consider the federal claim will result in a fundamental miscarriage of justice," <u>Harris v. Reed</u>, 489 U.S. at 262, because, as Magistrate Judge Peck correctly pointed out, he "has not presented any evidence, new or otherwise, that would allow the Court to find 'it is more likely than not that no reasonable juror would have convicted him.'" (R & R 91) (quoting <u>Sweet v. Bennett</u>, 353 F.3d 135, 142 (2d Cir. 2003)). For those reasons, the Appellate Division's conclusion that Jamison's <u>Brady</u> claim was procedurally barred was reasonable and Jamison is not entitled to federal habeas review of this particular <u>Brady</u> claim pursuant to the independent and adequate state grounds doctrine.

The Court has reviewed Jamison's remaining objections and finds them without merit.

CONCLUSION.

The R & R is adopted in its entirety. (Dkt. 36). The Clerk is directed to enter judgment for the respondent and to close this case.

Petitioner has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue.  See 28 U.S.C. § 2253; Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011).  This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and *in forma pauperis* status is denied.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 27, 2016